DUCKER, JUDGE:
Claimant, Oscar Vecellio, Inc., was awarded a contract by the respondent to construct a bridge and its approaches on State Route 61, over Loop Creek, a tributary of the Kanawha River, between Robson and Deep Water, in Fayette County, West Virginia, such bridge having been designated as Bridge No. 2339, and the work involved being Project S-17 (5) performed in 1969 and into 1970. The work included the construction of the permanent bridge, a temporary bridge to keep traffic open, and the necessary crib walls to protect the bridge approaches.
When the contractor, claimant herein, had erected the temporary bridge and sixty to seventy percent of the main bridge it discovered that it was practically stymied in the work, because with the temporary bridge located as it was, it could not build the crib wall which extended into the temporary bridge location. A conference was had between the claimant and the representatives of the respondent, the claimant was allowed to remove the temporary bridge and construct a temporary crossing about fifty feet further up Loop Creek, the temporary crossing consisted of two large tank car cylinders with their ends removed so as to permit the flow of the creek water through them, and of rock and dirt filled in and on the tank car cylinders to make a road to sustain the rerouted traffic. During July and August of 1969 there were heavy rains in the vicinity and the fill that had been made in connection with a part of the crib wall *238 and most of the temporary crossing were washed out, and it is for the cost of restoring the fill and temporary crossing the claimant now seeks to recover in this case.
The claimant alleges that the flooding caused the damages sustained by the claimant and that such flooding was so great as to constitute an Act of God, for which claimant was not responsible, and for the loss so occasioned it should be compensated. The amount of the damages has been stipulated by the parties as being $4970.48 for the structural excavation and repair work on the fill and crib work and $1365.86 for the restoration of the temporary crossing.
As all questions as to the amount of damages have been stipulated and agreed upon by the parties, the question of liability is primarily, if not solely whether or not the facts should be construed as an Act of God.
Although the claimant may have been in error in construing the plans as to building the temporary bridge and the crib wall which resulted in such a conflict which rendered it unable to pursue such work simultaneously, the situation was recognized by the respondent which later gave its consent to the removal of the temporary bridge and the construction of the temporary crossing some fifty feet away. It is, therefore, our opinion that the claim for damages sustained in connection with the crib work stands on a better basis than that of the damages done to the temporary crossing. The construction of the temporary crossing was one solely in the judgment of the claimant, and the possibility or probability of its destruction by the high water was one which was primarily the risk of the claimant.
As stated, liability of the respondent must be based upon this Court’s finding that the flooding was an Act of God under the 1960 Standard Specifications, Roads and Bridges, Sec. 1.7.12. The provisions of said specifications relieved the claimant of the duty to repair at its own cost any damage resulting from such Act.
The evidence is to the effect that, according to the information supplied by the U. S. Army Corps of Engineers, the rainfall in the Loop Creek area was 0.5 to 1.0 inches on August 19th, 1969 and 2.5 to 3.0 inches on August 20th, 1969. The normal water elevation of Loop Creek at the bridge site was 854.7 feet above sea level and the water level of the creek at the time of the flooding was 860.5 feet, the latter having been calculated immediately after the flooding. *239 The plans showed an extreme water elevation of 865 feet, but the witness who testified as to such figure could not tell just where the extreme water elevation figure came from, or on what basis the same was calculated. The only positive figures of normal and extreme water levels indicate about six feet difference. When these figures are considered with the other evidence, we are of the opinion that there did occur an “extraordinary flood” other than one of “normal intensity” as specified in the Standard Specifications, and that the flooding in this instance came within the definition of an Act of God.
As to the two items of damages, we are constrained to conclude that the cost of repairing the temporary crossing is one that should be borne by the claimant, as we cannot say that the construction of that crossing was of such soundness as to have been able to withstand much flooding of any degree, and that, therefore, any extraordinary flooding need not be considered.
We are of the opinion to and do hereby award the claimant the sum of $4970.48 for his costs in connection with the crib wall work, but disallow its claim for the damages to the temporary crossing.
Award of $4970.48.